May it please the Court, Stephen Barth, Federal Defenders, on behalf of Appellant Banuelos. Your Honors, during the course of this trial, the defense, in an attempt to rebut the government's claim that Enadino Banuelos knew there was marijuana in his car, elicited a single statement that Salvador Banuelos, the prior registered owner of the car, was the subject of an interstate drug trafficking investigation. However, this one statement, when looked at closely, when examined closely, is so insubstantial as to have almost no weight at all. In other words, or in essence... What statement was meaningless? The statement that Salvador Banuelos was the subject of an interstate drug trafficking investigation. Who made the statement under what circumstances? The circumstances was Agent Hayes made that statement. Well, I asked Agent Hayes, Agent Hayes, do you know that he... Who does Agent Hayes work for? He works for the government. Was he a DEA agent? No. What was he? He was a customs agent. Customs agent. And so you had a United States government customs agent saying that the guy was the subject of an investigation. That's correct. He was meaningless and... meaningless? Yes, almost meaningless. While I do... Strike almost. Your Honor, the reason is, is because the jury, in essence, learned the following from that statement. That this third party, Salvador Banuelos, was at some place unknown to the jury, at some time unknown to the jury. May have been, remember he was the subject of an investigation, may have been involved in the trafficking of some drug unknown to the jury. Now, in contrast to that, what the defense was prohibited from eliciting at trial were the necessary, crucial facts that showed that Salvador Banuelos certainly and very likely was responsible for the marijuana in that car. And... Because it had been his car at one time? For a number of reasons, Your Honor. One was, he was the prior registered owner. Not just the prior registered owner, but the one directly before Enidino Banuelos. I have a question regarding the means by which you offered to prove these facts at the trial. As I remember the transcript, and correct me if I'm wrong, a Federal Public Defender investigator got on the stand and wanted to testify as to the contents of a State of Illinois investigative report. Right? A search warrant affidavit. A search warrant affidavit. Question number one, what was the authentication proof by the Federal Public Defender of the document from which he intended to testify? It was certified, Your Honor. I believe it was self-authenticating. Self-authenticating under Illinois law? Under Federal law, Your Honor. Under Federal law. Yes. All right. Secondly, what was the foundational testimony by the Federal Public Invest Public Defender investigator as to the means of preparation of the Illinois report? Whether it was done in the regular course of business, whether it was done by a person who had knowledge of the facts recited therein, whether the facts recited therein were observed close to the time when the preparation of the report was done, whether the sources were trustworthy. The foundation for a business record. Who testified to that? Well, Your Honor, we weren't trying to admit it as a business record. We were trying to admit it as a public record. Even as a public record. Where is the foundation that it was prepared as a public record other than the certification which goes to authenticity but doesn't go to the hearsay of the judge? As we proffer to the judge, Your Honor, he went to the Cook County District Court and received it from the county clerk there as a public record. Well, the clerk got it as a public record because whatever the clerk gets, he has to file.  But where was the evidence that the investigator from Illinois prepared the record in a proper way? The foundational testimony. Our investigator from Illinois or the or the person who wrote the report? State officer. Was he called? No, he was not called. Wasn't he the person who you had to call to lay the proper foundation to get around the hearsay objection? No, I disagree, Your Honor, because it was both a self-authenticating document. As to authenticity, but not as to mode of preparation to get around the hearsay. I think, Your Honor, the hearsay exception to the rule 8038, that it's a public records document, gets around the hearsay rule. But when a proper foundation is laid as to the method of preparation of the document. Your Honor, certainly the You do distinguish between the concepts of authenticity, which is part of the foundation. Yes, Your Honor. And the method of preparation of the document, which gets around the hearsay objection. Well, the method of preparation for the document was in the document itself. He discusses. But who could cross-examine the document? Your Honor, well, that's the point of a public record, so that it isn't necessary to bring in somebody to cross-examine them. They are considered trustworthy standing alone, loyal to the media. As to a hearsay objection, you don't have to have a foundational witness testify as long as the document is authentic? Sir, Your Honor, certainly we could have brought the witness was ready to testify how he obtained the document. He couldn't testify as to how the document was prepared. We're running on parallel rails. Thank you. How would this document help your case? Thank you, Your Honor. First, what we didn't get in was the drug that he was trafficking in this case was marijuana. Okay? That never was before the jury. As far as the jury knew, Salvador Banuelos could have been trafficking in pharmaceuticals without a license. And this is important, of course, because the very drug that was found in Ennadino Banuelos's car was marijuana. Moreover, he was trafficking in large quantities of marijuana. As the search warrant affidavit points out, hundreds of pounds of marijuana were being trafficked. This is important because a significant amount of marijuana was found in the defendant's car, 35 kilos, almost 80 pounds. Does the search warrant show that he was an international smuggler bringing marijuana across the Mexican border in California? No, it doesn't, Your Honor. However, it shows that he was responsible for bringing cannabis and cocaine into Chicago from Texas. That's correct, Your Honor. Is that the same as driving something across the border in California in a car? No. But certainly, Your Honor, as in Vallejo, the court pointed out and this court pointed out in that case, certainly the prior registered owner could have prepared the car, not for a trip across the border, but certainly for his trafficking activities wherever it be in the country. And perhaps because he was under investigation by the Chicago Police Department and the DEA. Perhaps for other reasons. That's a pretty weak inference, though, isn't it? I don't think so, Your Honor, because this person is certainly considered by Federal and State authorities to be higher up in a drug smuggling organization, was the last person to own this car before Enedino Banuelos. Your client had had the car for how long? About two or three weeks, Your Honor. And prior to that time, whose car was it? It was Salvador Banuelos. So two to three weeks. That's correct, Your Honor. Now, I think Your Honor brings up a good point. This person transported drugs hundreds of miles across the country. El Paso to Chicago is 1,700 miles. This goes to show that he probably needed cars to do that transportation. At trial, it was listed he had nine vehicles. It's not unlikely that he was using those vehicles to transport his marijuana. Moreover, the timeline was never shown to the jury. That is, this record of sworn statement by Officer Rector was sworn out in May of 2001. Enedino Banuelos got the car in May of 2002, almost exactly one year later, and there was testimony at trial that this compartment was at least a year old. If you had gotten this document into evidence, how would you have argued your case to the jury? How would you have used it to support your case? My case would have been supported because I could have made Salvador Banuelos. What would you have said to the jury using this document? I would have told the jury this is a man who smuggles hundreds of pounds of marijuana across the country. We know that. He's considered by the DEA and the Chicago Police Department to be a known hire-up, a boss, a kingpin in a major drug smuggling organization. Drugs regularly passed through his hand. Officer Rector showed there was a failed attempt at a two-kilo transaction of cocaine. And therefore, it was his marijuana in the car that your client was driving? Very possibly. I should have been allowed to argue that to the jury with the facts that made Salvador Banuelos become an actual drug smuggler, as he was. In addition, Your Honor, he had 20 pounds of marijuana found at one of the residences he kept in his name. It would not be unreasonable to suggest to the jury that if he was willing to put 20 pounds of marijuana in a house he kept in his own name, he would be willing to put 35 kilos of marijuana in a car he kept in his own name. These are all things I was prevented from arguing. Also, the timeline. I mentioned that earlier. The investigation done in Salvador. How would you have gotten Salvador to put the 35 kilos of marijuana a year after he no longer owed the car into an Adino's car without an Adino's knowledge? Your Honor. I mean, is something he forgot a year ago? Your Honor. The shipment he forgot. Or was an Adino going to be an unknowing mule? Yes. Your Honor. Which one? I don't think I would have been hamstrung or pigeonholed into one of those arguments. I think I certainly could have said one of two things or both. One, Salvador Benuel is a major drug trafficker, had this car a year ago. It was only transferred to Adino two, three weeks before his arrest. There was no testimony as to how old that marijuana is. Regularly in our district, we have cases where cars are found even after they go through the U.S. Marshal Service and are resold, old stashes of contraband in well-hidden compartments. That's why I cited the case of U.S. v. Cervantes, Your Honor. But I wouldn't have been limited to simply that argument. Also, in the search warrant affidavit, it says he used subordinates. That was important because there was a third player here, and that was this person, David. Now, I don't know if David was actually Salvador Benuel. He certainly used other means of distancing himself. Perhaps he used an AKA. But perhaps he also used a subordinate. And perhaps David was getting rid of a hot car, and that's why he sold it to Adino. Or perhaps he did dupe him, as we often see in this district, as a blind mule theory. However, I don't think I needed to pigeonhole myself to one argument. I think the bottom line, the theory of our case, was one way or the other, Salvador Benuel, this known drug trafficker, very well could have been responsible for the marijuana that was found in the car. You've got a minute and 45. Yes, Your Honor. I would just like to relate. I want to leave a minute for rebuttal, Your Honor. Your Honor, however, I would say that 803.8 would have covered both Officer Rector's statements as a public record. It would have also covered Agent Hynek's statements at the DA agent that he made to. . . Actually, over time. We'll give you an opportunity to respond. We'll hear from the other side. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States. Seeing as how the defense counsel has made the search warrant affidavit the centerpiece of his case, I'd like to focus my remarks on that piece of evidence as well. And the gist of our case, Your Honors, is that this evidence simply was not relevant. When we talk about. . . Not relevant? Not relevant under the doctrine of third-party culpability or minimally relevant such that its exclusion was not reversible error. And the reason why we contend that it's not relevant, Your Honor, is because under the threshold rule, which governs evidence of third-party culpability, for such evidence to be admissible, it must. . . It can't simply afford a possibility of suspicion against a third party. Rather, as this Court has held, both in the Guam v. Ignacio case, at 10F3rd at page 615, and the case of Perry v. Rusham at 713F2nd at 1449, that evidence must be coupled with substantial evidence tending to directly connect this third party to the actual commission of the crime. And we contend that in this case, the disputed evidence was that the Salvador Banuelos was some kind of a drug boss in Chicago. The only fact that connects, that the defense has alleged that connects him to this registered owner, but the prior registered owner of the vehicle in this case. But other than that, there was no evidence that Salvador Banuelos was in San Diego at the time of this offense. There was no evidence that Salvador Banuelos asked Annadino to drive this car across the border. Well, at the time of this offense, that's right. But it seems that there was testimony to try to prove that this marijuana could have been, this contraband could have been in the car for a long time. You see, I would dispute that, Your Honor. That is sort of, when Judge Villa asked the defense counsel, how would you argue the case, he suggested that as a possible theory. There was never any evidence in this case as to the age of the marijuana. And I would submit that. Well, but what about the compartment itself? Wasn't there considerable evidence as to the compartment itself and how long it had been there and marks and stuff like that on it? Well, there was evidence that the compartment was about a year old. That was one of the defense. That's the point. And that wasn't the idea there to create the inference that this stuff could have been in there for a year? Well, I would suggest that the defense, since this is their defense, they didn't deduce any evidence that that marijuana was old. I mean, just because there's a compartment on a vehicle for a year, I don't know how that connects Salvador Banuelos. Well, Salvador Banuelos is a major drug trafficker. And a year ago, he was running large quantities from the southwest to Chicago. It's fair to think that he was doing that somehow other than passenger pigeons and that stuff could have been in the car. I mean, you know as well as I do. You've been in the business probably for a long time. People put stuff in cars down in Mexico and California all the time. They never pick it up. I mean, cars are found all the time with junk still in them. Well, I would ñ I know the defense counsel said that it's a regular occurrence of lost loads. I would dispute that. I mean, I know he cites ñ Ever seen it before? I have seen it before, but not regularly. It doesn't happen every year. So we're quibbling over regularly. Well, in the context of this case, Your Honor, though, but I'm saying the law, this Court has held that there has to be substantial evidence. So all we have is that there was a prior ñ that a drug dealer was the prior owner of the car and that there was a compartment on it that was a year old. But when you look at all the other facts that they're trying to suggest are probative, they're speculative. And that's how this case is squarely distinguished from Vallejo, which I know defense puts a lot of reliance on. Now, in Vallejo, yes, it was held that excluding evidence of the arrest of a prior registered owner of the car was reversible error. But there are two key facts that distinguish Vallejo from this case, and that's one, there was a substantial proximity of time and place between the third-party conduct in Vallejo and the arrest in that. What does substantial proximity mean? Share that if it's abstraction and make it real. One month and four days. One month and four days. In Vallejo, the prior RO was arrested one month and four days before the defendant. In this case, the timeline we're talking about, Enadino was arrested June 2nd, 2002. The search warrant was sworn out and executed May of 2001. That's already 11 months prior. The evidence that's contained in the search warrant affidavit, there are two groups of facts. One talks about a failed hand-to-hand cocaine sale in Chicago in July 2000. That's 23 months before the instant arrest. The other group of facts talks about a search warrant that was executed at a residence in Hammond, Indiana in September of 2000, where three-fourths of a kilogram of cocaine and 22 kilograms of marijuana were found. That's 21 months before this arrest. So not only do you have this distinction between the proximity of time and place, more importantly, as the Court in Vallejo found, in Vallejo there was substantial similarity in the modus operandi. In fact, there were five separate levels of similarity. In that case, the third-party culprit in Vallejo was arrested for the exact same offense as Vallejo himself, importation of drugs. Not only that, it was the same drug, marijuana. Not only that, the opinion says it was the same quantity. Not only that, the drugs were smuggled using the same M.O., a secret compartment in a car, and not only that, the prior arrest happened at the same port of entry, which was Calexico. That's five levels of substantial similarity that are not present here. And even the Vallejo opinion itself, I would point out, Your Honors, at 237F3rd at page 1023, even Vallejo states that ordinarily, evidence of another person's similar arrest may be too remote. But here, the timing of the two arrests and the virtual identity of their circumstances, when combined with the fact of prior ownership, infuse this evidence with unique relevance to the defendant's no-knowledge defense. Vallejo argues that the district court abused its discretion by excluding evidence that Jose Jaramillo, the former owner of the car Vallejo was driving, had previously been convicted of bringing the same amount of the same drugs into the country at the same port of entry using the same method of concealment in a different car. That's what you're talking about. That's exactly what I'm talking about, Your Honor. That is not present here. We're talking about a July 2000 failed hand-to-hand cocaine sale involving Salvador Van Wels. We're talking about an execution of a search warrant at a home where 22 pounds of marijuana happened to be found. The prior evidence, the disputed evidence in this case, doesn't put Salvador Van Wels at the international border. There is no evidence that he used his minions to bring in drugs across the international border. All the warrants said, as Judge Traub pointed out, was that he was importing drugs from Texas to Chicago. So for that reason, we do believe that Vallejo is squarely distinguished. May I ask you a question? Pardon me for interrupting. A question that was raised by Judge Traub a moment ago. The judge's ruling in the district court on the admissibility of the declaration for the search warrant, if that is an error, do we review that de novo or do we review it for an abuse of discretion? Our convention is abuse of discretion. What if he's got the facts, what if he got the law wrong? What if the plaintiff is correct that this is an official record and gets around both authenticity and hearsay objections? Isn't that a legal question? Well, and I think that fits within the abuse of discretion standard because I think the abuse of discretion standard is defined, although it's not set forth in the briefs, as either clearly erroneous under the facts or a clearly erroneous application of the law. So I don't know that it's necessarily a problem. I know between our offices I've seen a lot of briefs. This Court has probably seen it time and time again. And exclusion of evidence becomes an issue. Defense opening brief says de novo. We say, no, it's abuse of discretion, and then we have this debate. But we do believe that the weight of authority shows that when you're talking about the exclusion of third-party evidence, it was in the Guam v. Ignacio case, the people v. the United States v. Stewart case that we cited in our standard review that it is an abuse of discretion. Well, the difference is if the exercise of discretion is predicated on an erroneous belief of law, then the discretion, the exercise of discretion is no good. But if it's predicated on an understanding of the law, then you look at it and see whether it was an abuse of discretion. In any event, we don't believe that the Court here misapplied the law. And we would also point out the principle that this Court can affirm the district court on any basis that's fairly supported by the record. Do you have anything else? I would just like to conclude with a point on harmless error, Your Honor, because I know that we were talking about the importance of this evidence. As we note in our papers, even without this evidence, there was substantial circumstantial or there was overwhelming circumstantial evidence of guilt. This defendant was the driver and registered owner of the load vehicle. Seventy-seven pounds of marijuana were found therein, which is a substantial quantity. It had an estimated street value of $62,000. Not only that, the evidence showed that the defendant exhibited substantial nervousness when he was at the port of entry. His hands shook when he handed over the registration documents to the border inspector. And there was evidence that his demeanor suddenly changed from being smiling and talkative to quiet and just looking straight ahead once he was informed that he was referred to secondary. But another piece of evidence I really want to highlight are those carpet clips, Your Honor. It's a very unique case. In this case, the secret compartment was only accessible from the interior of the van. It was hidden under carpet. And the carpet was concealed in the compartment, and it was held in place by 12 carpet clips. Evidence showed that, and even the defendant admitted when he was on the stand, that five days before his arrest, he put a rush order in for 12 brand-new carpet clips. And those carpet clips are affixed to the carpet just one inch from the access panel of the secret compartment. And we would contend that that is substantial evidence of guilt. And finally, Your Honor, I would point out that the defense never addressed our harmless error arguments in their reply brief. Unless this Court has any further questions, we would submit. Thank you, Counsel. Very briefly, Your Honor, there was a substantial link. This fellow, Salvador Van Wells, was the previous owner of the car directly before Enadino, two to three weeks before his names were on the transfer documents. What was the time interval between exactly what was the real time between the suspect Van Wells' involvement with the car and your client's arrest with it? Well, Your Honor, the transfer documents had Salvador Van Wells' name on them, and they were signed two to three weeks before the arrest in May of 2002. But who had the car? Well, Your Honor, we don't know if it was physically in Salvador Van Wells' possession. A person who went by the name of David sold the car to Enadino Van Wells. It wasn't the suspect, Van Wells, who sold the car to him. Salvador Van Wells? Yes. Well, this person seems to be very good at distancing himself using sham residence subordinates. He may have been using an AKA, or he may have been. Counsel says, you know, Vallejo is fact-specific, and it says the similarity of circumstances provides an alternative theory of how the drugs were secreted without his knowledge. Jaramillo was arrested one month and four days. I mean, they said, boy, this is just too tough to ignore. Your Honor, first, this case is factually similar to Vallejo. And moreover, I don't think you can just cut Vallejo down to its exact facts. Each case is going to be slightly different. But what Vallejo stands for is that another person could have possibly put the drugs in the car, preparing the car for some of his drug-trafficking activities. He didn't get the opportunity to for whatever reason, and perhaps he sold it. And they speculated in that case. Perhaps he got it ready. Perhaps he sold it as a means of not being charged with two crimes. And that speculation is true, Your Honor. But as in Vallejo, as Vallejo points out in Crosby, you're allowed to speculate. Indeed, this Court ---- Even if the defense theory is purely speculative, as the district court characterized it, the evidence would be relevant. That's correct, Your Honor. If the evidence that someone else committed the crime is, in truth, calculated to cause the jury to doubt, the Court should not attempt to decide for the jury that this doubt is purely speculative and fantastic, but should afford the accused every opportunity to create that doubt. Wigmore. And as the Court points out in both Crosby and Vallejo, they are guided by Professor Wigmore's statements. I do want to address very briefly Perry v. Russian and People of Guam v. Ignacio. Perry v. Russian was a habeas case. They did not say that the evidence was irrelevant. However, what they said was it didn't amount to a Sixth Amendment or Fourteenth Amendment violation. People of Guam v. Ignacio, this was a child abuse case. The party was ---- the third party was the victim's mother, a boyfriend, who simply committed suicide and occasionally stayed overnight at the house. In fact, this was the same person who urged the victim's mother to go to the police. There was really absolutely no connection in that case between the alleged third party, because he committed suicide, and the abuse of this child. Indeed, that evidence should have been excluded because it would have confused the jury. This is not the case. This case is factually similar to Vallejo. It should be reversed and remanded, whether using a de novo or an abuse of discretion standard. Thank you. Thank you. Thank you, Counsel. The case just argued is ordered and submitted. And we'll call United States v. Marmolejo-Rios.
judges: Trott, Rawlinson, Bea